## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ABASS EL-HAGE,
on behalf of himself and all others similarly situated,

      Plaintiff,

vs.

COMERICA BANK, and
ELAN FINANCIAL SERVICES,

      Defendants, jointly and severally.
_____/

Case No.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, Abass El-Hage ("Plaintiff"), by and through his attorneys, Koussan Hamood PLC, brings this action on behalf of himself and all others similarly situated. This Class Action Complaint ("Complaint") is based upon personal knowledge as to allegations regarding the Plaintiff and upon information and belief and Plaintiff's counsel's investigation as to the other allegations in the Complaint. Plaintiff hereby alleges as follows:

### NATURE OF THE ACTION

1. This is a proposed class action against Defendant Comerica Bank ("CB") and Defendant Elan Financial Services ("ELAN") for: (a) enrolling customers into Overdraft Protection without their consent so they are able to charge customers an Overdraft Protection Transfer Fee (approx. $8.00-$16.00 per occurrence), an Overdraft Protection Fee ($10.00 per occurrence) and a higher interest fee (25.7%) on each Overdraft Protection Advance; (b) rounding up to the nearest $100.00 increment when transferring monies from customers' ELAN credit cards

to their CB checking accounts, even if their customer only overdrafts by as little as $1.00; and, (c) over drafting customers' CB checking accounts to pay the minimum amount due on their ELAN credit card – which was only used to pay the overdraft fees and interest that accumulated from customers' CB checking accounts being continuously overdrafted. [CB and ELAN are collectively referred to as "Defendants"].

2. Plaintiffs action alleges violations of the Michigan Consumer Protection Act ("MCPA"), MCL 445.901 *et* seq; breach of contract; and unjust enrichment.

3. Plaintiff seeks damages, equitable relief and/or disgorgement.

## THE PARTIES

4. Plaintiff is a citizen of the State of Michigan and resides in Detroit, Michigan.

5. Defendant CB is a Federal Deposit Insurance Corporation ("FDIC") insured banking institution headquartered in Dallas, Texas.

6. Defendant ELAN provides a complete range of processing and payments services, including credit card issuing, prepaid card solutions and automated teller machines ("ATMs") and debit card processing and is headquartered in Minneapolis, Minnesota.[1]

7. Under information and belief, Plaintiff originally opened a checking account with CB in the Fall of 2007 (the "CB checking account"). Plaintiff has since closed his CB checking account.

8. Under information and belief, Plaintiff originally opened a Visa Platinum credit card with ELAN in the Fall of 2017 ("ELAN credit card"). Plaintiff has since closed his ELAN credit card.

---

[1] https://www.businesswire.com/news/home/20111221005074/en/Elan-Financial-Services-Acquires-700-Million-Financial.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), because at least one class member is a citizen of a different state than Defendants; there are more than 100 putative class members; and the aggregate amount in controversy exceeds $5,000,000.00.

10. This Court has personal jurisdiction over Defendants in this case, as they are authorized to do business and in fact do business in this State, they have sufficient minimum contacts with this State and otherwise intentionally avail themselves of the markets in this State through the distribution, promotion, marketing and sale of their products and services in this State, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. To this end, according to the FDIC, as of December 10, 2019, CB had 193 FDIC insured branches in Michigan. Moreover, ELAN is a credit card issuer for more than 1,700 clients across the United States, some of which are located in Michigan (i.e. CB).

11. Venue is proper in this Court under 28 U.S.C. 1391(b)(2) because Defendants conduct business in this district and a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

12. CB operates 435 branch offices and approximately 600 ATMs across Texas, Arizona, California, Florida, New York and Michigan.

13. ELAN provides transaction processing, terminal driving and the necessary monitoring and support services for over 27,000 ATMs nationwide (some of which are located in

3

Michigan) and supports more than 20 million ATM and debit cards (some of which are used in Michigan by Michigan residents, including Plaintiff).[2]

14. With its network of ATMs and branches, CB provides a number of financial products and services to its customers, including, checking accounts, savings accounts and ELAN credit cards.

15. After opening a CB checking account, customers can debit their account through a number of means such as CB "debit" card[3] or paper checks. Unlike a credit card, CB's debit card deducts the purchase amount from the customers' CB checking account.

16. An "Overdraft Fee" is a fee charged by Defendants when they accept and process a transaction but there is not enough money in the CB checking account to cover the transaction.

17. Customers such as Plaintiff rely on Defendants to fairly and accurately account for the funds placed into checking and savings accounts. This includes charging fees on the account, such as Overdraft Fees, only when proper.

18. CB also provides customers that have an ELAN-serviced credit card to request "Overdraft Protection."

19. Overdraft Protection is a method of advancing funds (called an "Overdraft Protection Advance") from customers' ELAN-serviced credit cards to their CB checking accounts when their CB checking accounts are overdrafted.

---

[2] *Id.*
[3] Debit cards include ATM cards as well as "hybrid" check cards. Hybrid check cards operate as ATM cards but bear the Visa or Mastercard logo and are accepted by merchants who accept credit cards but would not otherwise accept ATM cards. Plaintiff's card is a CB branded hybrid card with a Visa logo. Plaintiff has the ability to use his card for Point of Sale purchases like a debit or credit card and as an ATM card.

20. Overdraft Protection is listed as an option that must be "**specifically requested**" in the Cardmember Agreement for the ELAN credit card (**Exhibit A** – ELAN Cardmember Agreement).

21. However, Plaintiff was enrolled in Overdraft Protection even though he never requested Overdraft Protection when he originally opened his ELAN credit card, or at any time thereafter.

22. The ELAN Cardmember Agreement describes an Overdraft Protection Advance as "an advance of funds to your designated checking account from your [ELAN credit card] **that will prevent overdrafts** on your checking account." Exhibit A, p. 2.

23. While this may seem like a useful tool, Overdraft Protection Advances do not in fact prevent overdrafts on customers' checking accounts. Indeed, Defendants still charge customers an "Overdraft Protection Fee" in their CB checking account when they generate an Overdraft Protection Advance.

24. Defendants also use Overdraft Protection Advances as an opportunity to add additional charges to customers' ELAN-serviced credit cards, such as an "Overdraft Protection Transfer Fee" of $10.00.

25. Defendants also charge customers with Overdraft Protection a higher interest rate (25.24%)[4] for Overdraft Protection Advances, as they are considered "Advances."

26. "Advances are transactions, other than a Purchases, that allow you direct access to funds available through your [ELAN credit card]." Exhibit A, p. 2.

27. So, customers with Overdraft Protection are being charged three different charges (an Overdraft Protection Fee, Overdraft Protection Transfer Fee and a high interest rate) each time

---

[4] Than the traditional interest rate (21.24%) on their ELAN credit card.

their CB checking account is overdrafted, and an Overdraft Protection Advance is automatically transferred from their ELAN credit card.

28. This issue becomes especially problematic when customers, like Plaintiff, do not request Overdraft Protection but are nonetheless enrolled in the Overdraft Protection same by Defendants.

29. Defendants have a motive to automatically enroll their customers in Overdraft Protection to increase the fees and interest rates that they reap profits from.

30. Defendants apparently also round up to the nearest $100.00 increment when they transfer an Overdraft Protection Advance from customers' ELAN credit cards to their CB checking accounts, even if their CB checking account is only overdrafted by a nominal amount.

31. For example, if a customer over drafts their account to a -$1 balance in one day, CB will transfer $100 from the customer's ELAN-serviced credit card into their CB checking account. Thereby increasing the amount of the interest Defendants charge the customer on the unnecessary $99.00.

32. Defendants also overdraft customers' CB checking accounts to pay the minimum balance on their ELAN credit card, even where the ELAN credit card balance only accumulated as a result of several Overdraft Protection Advances, Overdraft Protection Transfer Fees and the high interest rate.

33. Defendants accomplish getting their customers into the above-cycle by automatically enrolling their customers' CB checking accounts into automatically paying their ELAN-serviced credit cards. This auto-pay will automatically debit a customer's CB checking account for the sole purpose of paying off the self-accumulated credit card balance. This illogical, and patently unfair, cycle will sometimes result in the ELAN-serviced credit card effectively

6

advancing funds – more than necessary – from itself to pay its own minimum payment, resulting in nothing more than an additional fees to CB and ELAN for moving a fabricated debt from one account to the other.

34. In Plaintiff's case, Defendants overdrafted his CB checking account to pay the minimum balance of $500.00 on his ELAN credit card on January 2, 2018. Then, on January 3, 2018, Defendants transferred an Overdraft Protection Advance in the amount of $1000.00 to his checking account from his ELAN credit card charging him an Overdraft Protection Fee, Overdraft Protection Transfer Fee and a high interest rate on the $1000.00 automatically transferred as an "advance."

35. Within a **one-month** period, from December 12, 2017 to January 9, 2018, Defendants transferred **$6,000.00** in Overdraft Protection Advances from Plaintiff's ELAN credit card into his CB checking account, charged him with nine (9) Overdraft Protection Transfer Fees and $83.17 in heightened interest, while Plaintiff was traveling abroad in Cairo, Egypt.

36. Instead of stopping Plaintiff's CB debit card, or contacting Plaintiff to let him know that his CB checking account was overdrafted, Defendants continued to make Overdraft Protection Advances into his CB checking account all while accruing exorbitant charges and fees on Plaintiff's ELAN credit card and CB checking account until they became unmanageable for Plaintiff.

**Banks Use Overdraft Fees As A Profit Center**

37. According to the *New York Times*, for years banks covered customers who bounced occasional checks and even did so for a while for persons using debit cards without costs to the consumer.[5] However, in 1994 banks devised a program that would allow banks to provide

---

[5] *See* Ron Lieber & Andrew Martin, *Overspending on Debit Cards Is a Boom for Banks*, N.Y. Times, September 9, 2009, available at http://www.nytimes.com/2009/09/09/your-money/credit-and-debit-

overdraft coverage for every customer and charge them for each instance.[6] Today most overdraft charges are incurred on debit card transactions.[7]

38. Since 1994, bank overdraft charges have increased significantly. According to the Financial Times, overdraft charges have nearly doubled since the year 2000.[8] Indeed the median bank overdraft charge rose in 2009, marking the first-time overdraft charges have risen in a recession in more than 40 years.[9]

39. A report issued on October 6, 2009, by the Center for Responsible Learning ("CRL") shows that because banks charge a fixed overdraft fee regardless of the size of the transaction covered, "the fee bears no relationship to the actual cost to the institution of covering the overdraft. In fact, previous CRL research found that consumers paid about $2 in fees for every $1 in credit extended if they overdraw their account using a debit card at the checkout counter."[10] The report estimates that checking account holders receive only $21.3 billion in credit for the $23.7 billion they pay in overdraft fees.[11]

40. The CLR report indicates that lower-cost forms of overdraft protection like formal overdraft lines of credit or links to savings accounts are available, but banks typically enroll

---

cards/09debit.html; See also, Binyamin Appelbaum and Nancy Trejos Democrats Target Bank Overdraft Charges, Washington Post, September 21, 2009, available at http://www.washingtonpost.com/wp-dyn/content/article/2009/09/20/AR2009092002879.html?hpid=topnews ("In the age of handwritten cheacks, banks rarely made overdraft loans, but as the rise of debit cards vastly increased the volume of transactions, the industry gradually perfected a new strategy. Banks began to honor transactions, up to a preset limit, and then charge a fixed fee on top of the amount of the [overdraft] loan.")
[6] *See* Leiber *supra* note 3.
[7] Appelbaum *supra* note 3.
[8] Saskia Scholtes & Francesco Guerrera, *Banks make $38bn from overdraft fees,* Financial Times, August 9, 2009, available at http://www.ft.com/cms/s/0/43dl8c68-851d-11de-9a64-00144feabdc0.html.
[9] *Id.*
[10] *See* Leslie Parrish, *Overdraft Explosion: Bank dees for overdrafts increase 35% in two years,* Center for Responsible Lending (October 6, 2009), available at http://www.responsiblelending.org/overdraft-loans/research-analysis/crl-overdraft-explosion.pdf
[11] *Id.*

consumers in their most expensive overdraft loan program where the bank generally approves transactions, despite a shortage of funds, in return for an overdraft fee.[12]

41. According to the *Washington Post,* while most banks automatically offer overdraft protection to all account holders, **they do not notify customers when an overdraft is about to occur, nor do they offer them a chance to cancel the transaction**.[13]

42. Banks now make more from covering overdrafts than they do on penalty fees from credit cards. This is largely because a hypothetical $27.00 overdraft charge, repaid in two weeks on a $2.000 purchase, is the same as being charged an annual percentage rate on a credit card of 3,520 percent. In comparison, the penalty interest rate on a credit card is generally 30 percent.

43. Many banks no longer employ caps on the total number of overdraft fees incurred per day. Accordingly, consumers making multiple debit transactions in one day will pay hundreds of dollars in fees before knowing that their account is overdrawn.

44. More troubling, banks have found a way to further maximize the fees they collect by automatically enrolling their customers in Overdraft Protection linked to a credit card. Thereby opening their customers up to the opportunity to accrue excessive debt (up to the amount of the credit card limit and, in some cases, even beyond that) in a short amount of time, without notifying customers of the same (until they receive their monthly debit and credit card statements).

45. Upon information and belief, the following is Defendants' current policy on overdraft or overpayment of an account:

> 1) When items and transactions presented for payment would overdraw the CB Checking Account designated on the application, CB will automatically obtain an Overdraft Protection Advance from the designated Comerica [ELAN] Credit Card Account under the following conditions:
> **CB will pay items and transactions from your designated checking account in <u>any order convenient to the bank</u>.**

---

[12] *Id.*
[13] Appelbaum *supra* note 2.

2) When CB determines the total overdraft amount for a particular business day, CB will automatically request an Overdraft Protection Advance to pay all items creating the overdraft from credit available with the Comerica [ELAN] Credit Card Account. Any transfer will post as an Overdraft Protection Advance and be treated as a Cash Advance drawn on your Comerica [ELAN] Credit Card Account, and **each advance will accrue periodic rate interest charges and fees** according to the terms of the [ELAN] Cardmember Agreement then in effect for your Comerica [ELAN] Credit Card Account. See Terms and Conditions in the Cardmember Agreement for complete information about periodic rate interest charges and fees for Cash Advances made from the Comerica [ELAN] Credit Card Account. **Comerica Bank overdraft protection transfer fees may also apply**.

3) Regardless of the actual overdraft amount for a particular business day, the minimum amount of each automatic transfer CB requests for Overdraft Protection will be in **increments of $100.00**. The actual amount of the automatic transfer requested by CB will be in the nearest $100.00 increment above the total overdraft amount for a particular business day.

4) **CB will not be obligated to pay an item or transaction that would overdraw the CB checking account by more than the funds and credit available in your CB Credit Card Account**. The availability of funds advanced for Overdraft Protection from your Comerica [ELAN] Credit Card Account will remain subject to the terms and conditions of the [ELAN] Cardmember Agreement, as amended from time to time.

5) You understand and agree that your overdraft protection will be terminated automatically, without notice to you, if either of the designated accounts is closed for any reason by any party.

6) Advances for Overdraft Protection may be referred to as either "Overdraft Protection Advances" or "Financial Institution Cash Advances" in the [ELAN] Cardmember Agreement, account disclosures, and periodic statements.

7) An **Interest Charge of $10** will apply to each CB request for an automatic transfer of funds from your credit card account to your Deposit Account for Overdraft Protection. **CB fees may also apply**.

(**Exhibit B** – Comerica Bank Visa Platinum Card Terms and Conditions; "Terms and Conditions").

46. The following tables illustrate the Overdraft Protection Advances, Overdraft Protection Transfer Fees, Overdraft Protection Fees and interest incurred as processed by

Defendants and memorialized in Plaintiff's Checking Account Statements attached as **Exhibit C,** and Credit Card Statements attached as **Exhibit D**:

| **Checking Account Statements** | | | |
|---|---|---|---|
| **Date Processed** | **Withdrawals (-)** Overdraft Protection Transfer Fee | **Deposits (+)** Elan Credit Card OD Transfer | **Continuous Overdraft Fee** |
| 09/14/2017 | $12.00 | $100.00 | |
| 12/12/2017 | $8.00 | $2,700.00 | |
| 12/13/2017 | $8.00 | $200.00 | |
| 12/14/2017 | $8.00 | $400.00 | |
| 12/15/2017 | $12.00 | $100.00 | |
| 12/18/2017 | $12.00 | $200.00 | |
| 12/19/2017 | $12.00 | $300.00 | |
| 12/22/2017 | $12.00 | $2.00 | |
| 01/03/2018 | $16.00 | $1,000.00 | |
| 01/05/2018 | $16.00 | $400.00 | |
| 01/09/2018 | $16.00 | $700.00 | |
| 01/12/2018 | $16.00 | $100.00 | |
| 01/16/2018 | $16.00 | $100.00 | |
| 01/17/2018 | $16.00 | $100.00 | |
| 01/18/2018 | $16.00 | $200.00 | |
| 02/01/2018 | $16.00 | 200.00 | |
| 02/02/2018 | $16.00 | 500.00 | |
| 02/13/2018 | | | $6.00 |
| 02/14/2018 | | | $6.00 |
| 02/15/2018 | | | $6.00 |
| 02/16/2018 | | | $6.00 |
| 02/20/2018 | | | $6.00 |
| 02/27/2018 | $16.00 | $200.00 | |

| Credit Card Statements | | | | |
|---|---|---|---|---|
| Post Date | Transaction Date | Overdraft Cash Advance | Interest Charge on Cash Advances | Overdraft Protection Fee |
| 11/08/2017 | n/a | | $1.61 | |
| 12/08/2017 | n/a | | $0.02 | |
| 12/12/2017 | 12/12/2017 | $2,700.00 | | $10.00 |
| 12/13/2017 | 12/13/2017 | $200.00 | | $10.00 |
| 12/14/2017 | 12/14/2017 | $400.00 | | $10.00 |
| 12/15/2017 | 12/15/2017 | $100.00 | | $10.00 |
| 12/18/2017 | 12/16/2017 | $200.00 | | $10.00 |
| 12/19/2017 | 12/19/2017 | $300.00 | | $10.00 |
| 01/03/2018 | 01/03/2018 | $1,000.00 | | $10.00 |
| 01/05/2018 | 01/05/2018 | $400.00 | | $10.00 |
| 01/09/2018 | 01/09/2018 | $700.00 | $83.17 | $10.00 |
| 01/12/2018 | 01/12/2018 | $100.00 | | $10.00 |
| 01/16/2013 | 01/13/2018 | $100.00 | | $10.00 |
| 01/17/2018 | 01/17/2018 | $100.00 | | $10.00 |
| 01/18/2018 | 01/18/2018 | $200.00 | | $10.00 |
| 02/01/2018 | 02/01/2018 | $200.00 | | $10.00 |
| 02/02/2018 | 02/02/2018 | $500.00 | | $10.00 |
| 02/08/2018 | n/a | | $139.32 | |
| 03/08/2018 | n/a | | $140.27 | |
| 04/09/2018 | n/a | | $160.41 | |
| 05/01/2018 | n/a | | $150.32 | |

## **CLASS ACTION ALLEGATIONS**

47.     Plaintiff brings this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other similarly situated persons.

48.     Plaintiff seeks certification of a Michigan Class for the Michigan Consumer Protection Act claim, which initially is defined as follows:

> **All Michigan CB and ELAN customers who maintained checking accounts with CB, and credit cards with ELAN, and who were assessed overdraft fees and interest due to Defendants entering customers into Overdraft Protection without customers' consent, rounding up to the nearest $100 increment when transferring an Overdraft Protection Advance and over drafting customers' CB checking accounts to pay their ELAN credit card.**

Excluded from the Michigan Class are Defendants' current and former directors, offices, employees, agents and representatives, and members of their immediate families.

49. Plaintiff seeks certification of a National Class pursuant to the claims for breach of contract or, alternatively, for the unjust enrichment claim, which is initially defined as follows:

> **All CB and ELAN customers in the United States who maintained checking accounts with CB, and credit cards with ELAN, and who were assessed overdraft fees and interest due to Defendants entering customers into Overdraft Protection without customers' consent, rounding up to the nearest $100 increment when transferring an Overdraft Protection Advance and over drafting customers' CB checking accounts to pay their ELAN credit card.**

Excluded from this National Class are Defendants' current and former directors, offices, employees, agents and representatives, and members of their immediate families.

50. <u>Numerosity</u>. The proposed Classes are each sufficiently numerous such that joinder is impractical. Upon information and belief, each Class consists of at least thousands of members which can be ascertained through Defendants' records.

51. <u>Common Questions of Fact and Law</u>. Common questions of fact and law exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes, pursuant to Rule 23(b)(3). Questions of fact and law, which, among others not listed, predominate over any individual issues for each of the Classes are:

    a. Whether, in regard to the members of the Michigan Class, Defendant CB violated the Michigan Consumer Protection Act, MCL 445.901 *et seq*, through its unfair conduct in entering customers into Overdraft Protection without customers' consent, rounding up to the nearest $100 increment when transferring an Overdraft Protection Advance and over drafting customers' CB checking accounts to pay their ELAN credit card;

    b. Whether Defendant CB, by entering customers into Overdraft Protection without customers' consent, rounding up to the nearest $100 increment when transferring an Overdraft Protection Advance and over drafting customers' CB checking accounts to pay their ELAN credit card breached their implied covenant

13

of good faith under the contracts providing Defendants' customers with banking and credit card services; and,

c. Whether Defendants have been unjustly enriched by entering customers into Overdraft Protection without customers' consent, rounding up to the nearest $100 increment when transferring an Overdraft Protection Advance and over drafting customers' CB checking accounts to pay their ELAN credit card.

52. <u>Typicality</u>. Plaintiff's claims are typical of the claims of members of each of the Classes because Plaintiff and members of the Classes sustained damages arising out of Defendants' wrongful conduct as detailed herein.

53. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class action lawsuits. Plaintiff has no interests antagonistic to or in conflict with those of Class members and therefore is an adequate representative for the Class members.

54. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the joinder of all members of each of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of an inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### (Violation of the Michigan Consumer Protection Act)

55. Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of the Complaint as if fully set forth herein.

56. Defendants' acts and practices, as described herein, constitute unfair acts or practices in that they offend public policy are immoral, unethical, oppressive, unjust, unconscionable, and/or unscrupulous, and caused and continue to cause substantial economic

injury to Plaintiff and the putative Michigan Class. As such, Defendant's acts violate the Michigan Consumer Protection Act, MCL 445.901, *et. seq*. (the "MCPA").

57. Defendant's unfair acts or practices described herein include, but are not limited to:

   a. Enrolling customers into Overdraft Protection without their consent so they are able to charge customers an Overdraft Protection Transfer Fee (approx. $8-$16), an Overdraft Protection Fee ($10) and a higher interest fee (25.7%) on each Overdraft Protection Advance;

   b. the rounding up to the nearest $100 increment when transferring monies from customers' ELAN credit cards to their CB checking accounts, even if Defendants' customer only overdrafts -$1; and,

   c. over drafting customers' CB checking accounts to pay the minimum credit card fee on customers' ELAN credit card, which was only used to pay the overdraft fees and interest that accumulated from customers' CB checking accounts being continuously overdrafted.

58. As a result of Defendant's unfair acts or practices, Plaintiff and the Michigan Class have suffered injury in fact and have lost substantial money or property as each Overdraft Protection Advance incurs charges.

59. Pursuant to MCPA, Plaintiff, on behalf of himself and the Michigan Class, are entitled to equitable relief, including all monies paid to Defendant as a result of its alleged misconduct, a permanent injunction enjoining Defendant from its unlawful and unfair business activities as alleged herein and requiring it to implement processes and procedures to protect Defendant's customers from Defendants entering customers into Overdraft Protection without customers' consent, rounding up to the nearest $100 increment when transferring an Overdraft Protection Advance and over drafting customers' CB checking accounts to pay their ELAN credit card, and other appropriate relief as described herein.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

60. Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of the Complaint as if fully set forth herein.

61. Plaintiff entered into contracts with Defendants for banking and credit card services.

62. Plaintiff and members of the National Class performed their end of the bargain or were excused from nonperformance by Defendants' conduct.

63. Implied in the contracts were promises to charge fees and interest to customers, such as Plaintiff and members of the National Class, in accordance with principles of good faith and reasonableness.

64. Defendant breached its contract with Plaintiff and the Class members by:

   a. Enrolling customers into Overdraft Protection without their consent so they are able to charge customers an Overdraft Protection Transfer Fee (approx. $8-$16), an Overdraft Protection Fee ($10) and a higher interest fee (25.7%) on each Overdraft Protection Advance;

   b. the rounding up to the nearest $100 increment when transferring monies from customers' ELAN credit cards to their CB checking accounts, even if Defendants' customer only overdrafts -$1; and,

   c. over drafting customers' CB checking accounts to pay the minimum credit card fee on customers' ELAN credit card, which was only used to pay the overdraft fees and interest that accumulated from customers' CB checking accounts being continuously overdrafted.

65. As a direct and proximate result of Defendants' breach of contract, Plaintiff and Class members have been damaged in the manner set forth herein, in amounts to be determined at trial.

## THIRD CAUSE OF ACTION
**(Unjust Enrichment)**

66. Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of the Complaint as if fully set forth herein, with exception to paragraphs 59-64. This claim is pled in the alternative to the second cause of action (Breach of Contract).

67. Defendants have been enriched by their unfair acts and/or practices alleged herein.

68. The unfair acts and/or practices allowed Defendants to unlawfully receive monies that would not have otherwise been obtained.

69. Plaintiff and members of the National Class have paid Defendants for:

    a.    Enrolling customers into Overdraft Protection without their consent so they are able to charge customers an Overdraft Protection Transfer Fee (approx. $8-$16), an Overdraft Protection Fee ($10) and a higher interest fee (25.7%) on each Overdraft Protection Advance;

    b.    the rounding up to the nearest $100 increment when transferring monies from customers' ELAN credit cards to their CB checking accounts, even if Defendants' customer only overdrafts -$1; and,

    c.    over drafting customers' CB checking accounts to pay the minimum credit card fee on customers' ELAN credit card, which was only used to pay the overdraft fees and interest that accumulated from customers' CB checking accounts being continuously overdrafted.

70. Defendants lack any legal or business justification for having engaged in the unfair course of conduct as alleged herein, at the expense of Plaintiff and members of the National Class.

71. No other remedy at law can adequately compensate Plaintiff and members of the National Class for the damages occasioned by Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his behalf and on behalf of the Classes set forth herein, prays for relief as follows:

    A.    For an order certifying the Classes as set forth herein, and appointing Plaintiff and his counsel to represent the Classes;

B.    For an order awarding Plaintiff and the Class members actual and compensatory damages in an amount which may be proven at trial;

C.    For an order awarding Plaintiff and the Class members restitution and/or disgorgement and other equitable relief and the Court deems proper;

D.    For an order awarding Plaintiff and the Class members punitive damages as to the appropriate causes of action;

E.    For an order enjoining Defendants under the Michigan Consumer Protection Act, MCL 445.901, *et. seq*., from continuing to engage in the acts and practices as alleged herein;

F.    For an order awarding Plaintiff and the Classes pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert witness fees and other costs pursuant to MCR 2.625 and other statutes as may be applicable; and,

G.    For an order awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

KOUSSAN HAMOOD PLC

/s/Ali Koussan
By: Ali H. Koussan P75044
Attorney for Individual and Representative
    Plaintiff Abass El-Hage
821 W. Milwaukee
Detroit, MI 48202
(313) 444-8348
Fax: (313) 444-7814
ali@kh-plc.com

Dated: February 5, 2020